IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-215-BO

| | |
|---|---|
| SEONAID RIJO,<br>　　　　　Plaintiff,<br><br>v.<br><br>N.C. JUSTICE CENTER,<br>　　　　　Defendant. | ORDER |

This cause comes before the Court on defendant's partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the matter is ripe for ruling. For the reasons that follow, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff filed this complaint against her former employer alleging eight claims for relief: discrimination in violation of the Americans with Disabilities Act (ADA) (count one); retaliation in violation of the ADA (count two); sex and race discrimination in violation of Title VII (count three); retaliation in violation of Title VII for opposing sex and race discrimination (count four); willful wage and hour violations of the Fair Labor Standards Act (FLSA) (count five); willful violations of the Family Medical Leave Act (FMLA) in the form of interference (count six); willful violations of the FMLA in the form of retaliation (count seven); and wrongful discharge in violation of North Carolina public policy (count eight). Defendant has moved to dismiss counts one, three, four, five, and eight.

The following is a brief summary of the facts alleged in plaintiff's complaint, which are taken as true at this stage of the proceeding. Plaintiff is female and identifies as bi-racial. Plaintiff

was hired by defendant as a paralegal on June 28, 2010. Plaintiff has fibromyalgia and her need for a flexible work schedule was known to management and her supervisor. Within eleven months of her hiring, plaintiff was promoted to the position of senior litigation paralegal with a corresponding pay raise. Plaintiff alleges she worked hard for defendant and enjoyed her work.

Plaintiff maintained a flexible work schedule until February 23, 2018. Plaintiff alleges that prior to February 2018, she never had a set time schedule and that this was the same or similar to the vast majority of defendant's employees. Plaintiff alleges that to the extent she enjoyed any additional flexibility in her work schedule not enjoyed by other paralegals and support staff, plaintiff understood this to be a reasonable accommodation for her fibromyalgia and for her working numerous hours of unpaid overtime on nights and weekends. As far as plaintiff observed and understood, defendant's timekeeping system was a mere formality and defendant's employees were offered significant autonomy as a trade-off for lower salaries and lack of annual bonuses then which might be offered in other settings. Plaintiff alleges that she and other employees routinely recorded eight-hour work days when they worked far more or less.

Plaintiff enjoyed a good relationship with her direct supervisor for a number of years. Plaintiff alleges that that changed following her work on an attorney fee and costs petition submitted after defendant's success in a class action lawsuit. Plaintiff alleges she was required to create or recreate all of the billing and time records for all of the attorneys who worked on the case and that she complained to her supervisor about, among other things, ethical concerns regarding the defendant's conduct. Plaintiff also alleges that she had complained to defendant about improper and potentially illegal practices of the defendant regarding trust account management, wage and hour practices, and timely remittance of escheated funds to the State of North Carolina.

Plaintiff alleges that beginning on February 23, 2018, defendant stopped accommodating her fibromyalgia by allowing her to have a flexible work schedule. During a performance review meeting that day plaintiff was told by her supervisor that she would now be required to work from 9:00 am to 5:00 pm and that she would no longer be permitted to make up time during nights and weekends. Plaintiff alleges that this new work-schedule standard applied only to her and not to any other employee, and that her supervisor knew that plaintiff would be unable to maintain that schedule due to her fibromyalgia. After multiple meetings throughout the spring of 2018 and plaintiff's submission of documentation from her physician regarding her fibromyalgia, defendant approved an alternate work schedule for plaintiff on a temporary or trial basis. Plaintiff alleges that after one week of her new schedule her supervisor scheduled a formal counselling session due to plaintiff's alleged failure to adhere to her work schedule.

On June 26, 2018, Plaintiff was issued a written warning and a sixty-day performance improvement plan (PIP). Plaintiff alleges that once she returned from a prior-approved vacation between June 27, 2018, and July 16, 2018, she adhered to her trial work schedule everyday but one when she was twenty-five minutes late. On July 26, 2018, plaintiff was approved to take intermittent FMLA leave. Plaintiff had another meeting with her supervisor on August 7, 2018, during which her supervisor told plaintiff she had engaged in repeated violations of the attendance guidelines in her PIP, which plaintiff disputed. The same day, allegedly unbeknownst to plaintiff, an attorney plaintiff had retained sent a letter to the executive director of defendant alleging that plaintiff had been discriminated against on the basis of her race, sex, and disability, and retaliated against for raising concerns about possible unethical activity by defendant. Plaintiff was placed on administrative leave the following morning, and at 2:00 pm on August 8, 2018, plaintiff was called to the office and her employment was terminated.

Plaintiff alleges, *inter alia*, that other employees who were male and who were not bi-racial were permitted to have a flexible work schedule and that she was terminated in retaliation for protesting defendant's discrimination against her based on her race and sex. Plaintiff further alleges that defendant withdrew her reasonable accommodation for her disability, a flexible work schedule, for illegitimate and pretextual reasons and further that she was retaliated against for complaining about the withdrawal of her reasonable accommodation. Plaintiff also alleges that defendant failed to pay her overtime despite her status as a non-exempt employee and that she complained to defendant about its wage and hour practices.

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted).

Mindful that "discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery[,]" *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017), the Court has

4

considered the claims defendant seeks to dismiss in light of the applicable standard and finds that dismissal is not warranted at this stage of the proceeding except as outlined below.

Although the Court agrees with plaintiff's assessment that based upon the allegations in her complaint any alleged sex or race discrimination was not as blatant as her allegations concerning her ADA claims, the Court will permit plaintiff's Title VII claims to go forward at this time. Further, plaintiff agrees that her claim for willful violations of the FLSA has a three-year statute of limitations, 29 U.S.C. § 255(a), which would permit her to recover overtime only for hours worked between May 10, 2018, and May 10, 2021, and recognizing that plaintiff's employment was terminated on August 8, 2021. [DE 15 at 6]. Any claim for overtime prior to May 10, 2018, is dismissed. Finally, in her response plaintiff appears to limit her wrongful discharge claim to her allegations that her termination violated public policy expressed in the North Carolina Person with Disabilities Protection Act, N.C. Gen. Stat. § 168A, and North Carolina's Wage and Hour Act and Retaliatory Employment Discrimination Act. *See* N.C. Gen. Stat. § 95-241. The Court will permit plaintiff to proceed to discovery on these claims only, and plaintiff's wrongful discharge claim based upon Article 4 of Chapter 84 of the North Carolina General Statutes is dismissed.

## CONCLUSION

Accordingly, defendant's partial motion to dismiss [DE 11] is GRANTED IN PART and DENIED IN PART. Plaintiff's complaint shall proceed except as outlined above.

SO ORDERED, this 15 day of December, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE